UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WANITA BONDS,<br><br>        Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>        Defendant. | 1:04-cv-5826-SMS<br><br>DECISION AND ORDER ON SOCIAL<br>SECURITY COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING REMAND PURSUANT<br>TO SENTENCE FOUR of 42 U.S.C. §<br>405(g)<br><br>ORDER DIRECTING THE CLERK TO<br>ENTER JUDGMENT FOR PLAINTIFF<br>WANITA BONDS AND AGAINST<br>DEFENDANT JO ANNE B. BARNHART |

    Plaintiff is represented by counsel and is proceeding with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including ordering the entry of final judgment.[1] The matter is currently before the Court on the

---

[1] District Judge Anthony W. Ishii ordered the case assigned to the undersigned Magistrate Judge on November 16, 2004.

1

parties' briefs, which have been submitted without oral argument to the Honorable Sandra M. Snyder, United States Magistrate Judge.

## PRIOR PROCEEDINGS

On August 19, 1999, Plaintiff applied for a period of disability and disability insurance benefits (DIB) under Title II of the Act, alleging disability beginning on July 16, 1998, due to asthma. (A.R. at 56-66.) Plaintiff's claim was denied initially and on reconsideration. (Id. at 45-47, 50-53.) Plaintiff requested a hearing before an administrative law judge (ALJ) of the Social Security Administration (SSA). On August 9, 2000, Plaintiff appeared with an attorney and testified before the ALJ, James P. Berry. (A.R. 462-91.) The ALJ denied Plaintiff's application by decision dated September 18, 2000. (A.R. 366-70.) On January 29, 2001, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and remanded the claim for further consideration of Plaintiff's pulmonary limitations and for additional vocational evidence. (A.R. 383-84.) On July 29, 2003, Plaintiff appeared with counsel at a hearing. (A.R. at 492-537.) On September 26, 2003, the ALJ denied Plaintiff's application for benefits. (Id. at 21-28.) Plaintiff sought review of the ALJ's decision by the Appeals Council. On April 6, 2004, the Appeals Council denied Plaintiff's request for review. (A.R. 7-10.)

## ADMINISTRATIVE FINDINGS

The ALJ concluded that Plaintiff, a sixty-year-old individual with an eleventh grade education, suffered asthma, a severe impairment; however, it did not meet or medically equal

2

one of the listed impairments; Plaintiff had the residual functional capacity (RFC) to lift and carry frequently twenty-five pounds and occasionally fifty pounds; stand and walk six to eight hours in an eight-hour workday, sit six to eight hours in an eight-hour workday;  avoid concentrated exposure to extreme cold, heat, wetness, and humidity; and avoid moderate exposure to smoke, dust, chemical fumes, and gases. Plaintiff was unable to perform any of her past relevant work; she was an individual closely approaching retirement age pursuant to 20 C.F.R. § 404.1563;[2] she had a limited education pursuant to 20 C.F.R. § 404.1564; she had no transferable skills pursuant to 20 C.F.R. § 404.1568; and she had the RFC to perform a significant range of medium work pursuant to 20 C.F.R. § 416.967. Although due to exertional limitations Plaintiff could not perform the full range of medium work, using Medical-Vocational Rule 203.11 as a framework for decision-making, the ALJ concluded that there were significant jobs in the national economy that Plaintiff could perform, including produce grader, 1,600 jobs in California and 10,400 in the United States economy; and cleaner, with 45,800 jobs in California and 480,000 jobs in the United States economy. Accordingly, Plaintiff was not disabled. (A.R. 22-23.)

On June 14, 2004, Plaintiff filed the complaint in the instant action; the administrative record was lodged by Defendant on October 19, 2004. On December 21, 2004, Plaintiff filed an opening brief. On February 18, 2005, Defendant filed a brief in opposition. On March 1, 2005, Plaintiff filed a reply brief.

---

[2] All references to the Code of Federal Regulations are to the 2003 version unless otherwise noted.

ISSUE PRESENTED

The sole issue presented is whether or not Plaintiff is entitled to benefits because she was illiterate and thus did not have a limited education, as the ALJ found. Plaintiff does not challenge the ALJ's finding that despite Plaintiff's severe impairment of asthma, she was essentially capable of medium work wit nonexertional, environmental limitations stemming from her asthma.

FACTS

Defendant's brief did not contain a statement of the pertinent facts; Defendant only stated:

> The Commissioner states that administrative law judge (ALJ) fairly and accurately summarized the evidence of record in his hearing decision (Tr. 21-28), and that the record is adequate for judicial review.

However, the Court notes that the pertinent facts of record relating to Plaintiff's illiteracy are not summarized in the ALJ's decision. In failing to summarize the relevant facts, Defendant's brief failed to comply with the Court's scheduling order, which directs that responsive briefs <u>shall</u> contain a summary of all relevant medical evidence and testimony, citations to the record for all assertions of fact, and an explanation of the application of pertinent authority to the facts of the particular case.

Plaintiff asserts, and Defendant does not deny, the Plaintiff was born on August 19, 1943; thus, at the time of the ALJ's decision she was sixty years old. This is supported by Plaintiff's application (A.R. 56) as well as her testimony (A.R. 466).

Plaintiff testified that she completed tenth grade at Arvin

4

1 High and had attended school throughout the school years except
2 for leaving a couple of weeks before the end of the tenth grade.
3 She initially testified that she could not read at all and that
4 she could read nothing. (A.R. 468.) At a later hearing she
5 testified that she knew how to spell and write her name and
6 recognize simple words such as "stop" and "go" and "things like
7 that," but she could not read or write, and she could not sit
8 down and read a paper. (A.R. 501.) She testified that although
9 she had taken an oral driving test initially, she had in the last
10 few years obtained driver's licenses through the mail. (A.R. at
11 469.) To write her address she had to look for documents to copy
12 to know how to spell it. She had completed wood shop, economics,
13 leather crafts, and art with no problems but never passed any of
14 the main courses in school. She was never tested for or diagnosed
15 with a learning disability, but adult school attendance and
16 tutoring at the library, both of unspecified duration, did not
17 result in her learning to read. She obtained a driver's license
18 when she was twenty-five by taking an oral test. She had worked
19 pulling trash out of good potatoes on and off seasonally since
20 she was twenty-eight, and she had worked as an almond sorter for
21 ten or twelve years. She stopped working because of her breathing
22 in 1998. She continued to drive, albeit infrequently by the
23 second hearing, and she did her family's grocery shopping,
24 although family members would accompany her to help her lift
25 heavy bags. (A.R. 501-02, 467-70.)
26      At the second hearing Shanon Bonds, Plaintiff's daughter,
27 testified that her mother had been unable to read throughout
28 Shanon's life and had often taken Shanon out of school to help

5

her mother with things that needed to be read or signed. However, Plaintiff could write her children's names; Plaintiff somehow could keep all her medications straight, but sometimes she bought the wrong thing when grocery shopping. (A.R. 529-30.)

Vocational expert (VE) Thomas Dachelet testified at the first hearing that a plaintiff of fifty-six years of age with medium exertional capacity, the ability to engage in standing, walking and sitting for six to eight hours, but with a need to avoid exposure of an unspecified extent to pulmonary irritants and loud noise could perform about fifty per cent of the entire world of sedentary, light and medium work, and a person who was illiterate would have a further two-thirds reduction at the unskilled level, such as assemblers and laborers in light industry who were not otherwise coded. (A.R. 485-88.)

VE Kenneth Farra testified at the second hearing that a fifty-nine-year-old person with Plaintiff's past relevant work experience, eleventh grade education, and medium exertional RFC but with a need to avoid concentrated exposure to extremes in cold, heat, wetness and humidity and moderate exposure to fumes, dust and gases could perform the position of grader (not outside), 4,000 positions in California and 26,000 positions with a sixty per cent reduction in the United States; cleaner positions with 229,000 in California reduced by eighty per cent and 2.4 million in the United States reduced by eighty per cent. (A.R. 531-34.) He testified that his answer would not change if the claimant was illiterate or unable to read or write English. (A.R. 535.)

The ALJ stated that Plaintiff had an eleventh grade

6

education, but he corrected a similar mistake at the hearing. (A.R. at 21, 501.)

A social services initial note form from Bakersfield Memorial Hospital, completed in July 1999 when Plaintiff and her family were interested in Plaintiff's applying for permanent disability, indicated that Plaintiff stated that she was illiterate. (A.R. at 156.)

The only medical evidence pointed to by Plaintiff in support of her assertion that she is illiterate is a letter from Dr. Paula Ardron, a physician in the Kaiser Permanente allergy department. (A.R. 15.) Dr. Ardron referred to having reviewed a letter and documentation sent to her by Plaintiff's counsel; she noted the improvement in Plaintiff's asthma since she had gastric bypass surgery and had lost some excess weight. She stated:

> I reviewed Mrs. Bonds (sic) prescription refill record and she did show problems with compliance from 10/02 to 1/03 but demonstrated improvement throughout 2003. Mrs. Bond's (sic) illiteracy may have played a role during the Fall of 2002, but her daughter and husband have been helpful in assisting her with her medication instructions. She has not suffered from medication side effects from any of her asthma medications.

(A.R. 15.)

## SCOPE AND STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

1  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10
2  (9th Cir. 1975). It is "such relevant evidence as a reasonable
3  mind might accept as adequate to support a conclusion."
4  Richardson, 402 U.S. at 401. The Court must consider the record
5  as a whole, weighing both the evidence that supports and the
6  evidence that detracts from the Commissioner's conclusion; it may
7  not simply isolate a portion of evidence that supports the
8  decision. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).
9  It is immaterial that the evidence would support a finding
10 contrary to that reached by the Commissioner; the determination
11 of the Commissioner as to a factual matter will stand if
12 supported by substantial evidence because it is the
13 Commissioner's job, and not the Court's, to resolve conflicts in
14 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th
15 Cir. 1975).

16      In weighing the evidence and making findings, the
17 Commissioner must apply the proper legal standards. Burkhart v.
18 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must
19 review the whole record and uphold the Commissioner's
20 determination that the claimant is not disabled if the Secretary
21 applied the proper legal standards, and if the Commissioner's
22 findings are supported by substantial evidence. See, Sanchez v.
23 Secretary of Health and Human Services, 812 F.2d 509, 510 (9th
24 Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If the Court
25 concludes that the ALJ did not use the proper legal standard, the
26 matter will be remanded to permit application of the appropriate
27 standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th Cir. 1987).
28 ///

## ANALYSIS

I. <u>Disability</u>

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (2003); 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the

individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

## II. Plaintiff's Educational Level

The ALJ found that Plaintiff, a person closely approaching retirement age within the meaning of 20 C.F.R. § 404.1563, had the RFC to perform a significant range of medium work with environmental limitations but was not able to perform her past relevant work. In applying the medical-vocational rules, the ALJ found that Plaintiff had no transferable skills from any past relevant work; she had a "limited" education. (A.R. at 26.)[3]

Education is a vocational factor that is primarily used to mean formal schooling or other training, including learning from past work experience and daily activities. 20 C.F.R. § 404.1564(a). Education is evaluated by consideration of formal schooling and/or training, work activities, any other activities

---

[3] The ALJ relied on medical vocational rule 203.11, concerning one of advanced age, whereas the parties do not dispute that Plaintiff was actually closely approaching retirement age at the time of decision, and thus rule 203.18, which applies to persons closely approaching retirement, would be more accurately applied. Both rules direct a decision of "not disabled."

10

that might help a claimant work, actual educational abilities, timing of education and work history, and ability to communicate in English and do at least simple calculations in arithmetic. § 404.1564(b), (b)(6). If there is no other evidence to contradict a claimant's numerical grade level completed in school, then the SSA will use the numerical grade level to determine the claimant's educational abilities. § 404.1564(b).

The categories of education include illiteracy, marginal education, limited education, and high school education and above. § 404.1564(b)(1) through (4). Illiteracy is defined in § 404.1564(b)(1) as follows:

> Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling.

A marginal education is defined in § 404.1564(b)(2) as follows:

> Marginal education means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs. We generally consider that formal schooling at a 6th grade level or less is a marginal education.

A limited education is defined in § 404.1564(b)(3) as follows:

> Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through the 11th grade of formal education is a limited education.

Plaintiff asserts that there is no evidence contradicting Plaintiff's evidence that she was unable to read or write.

The record contains evidence sufficient to uphold a determination that Plaintiff could read some simple words. The

record contained Plaintiff's own admission that she attended all years of schooling from first through two weeks shy of the end of tenth grade. She admitted that she could read simple words and but could write a word only if she could copy it; her daughter admitted that Plaintiff could write her children's names. It might reasonably be inferred that Plaintiff could read or understand road signs because she drove for decades. Plaintiff performed the grocery shopping for years, although her daughter claimed that she sometimes bought the wrong thing; thus it could reasonably be inferred that she could read some words and could read, understand, and compute prices in a decimal system. Further, the record reflected that although Plaintiff claimed never to have been able to read, she was never tested or diagnosed with a learning disability.

However, the evidence as presently developed does not support a conclusion that Plaintiff could read simple messages such as instructions or inventory lists because such lists might contain words other than very simple words.

Further, the evidence does not support a conclusion that Plaintiff could write a simple message such as instructions or an inventory list because there is no evidence that Plaintiff could spell even simple words other than her own name and the names of her children, let alone other words that would reasonably be expected to be included in such writings; it is reasonable to assume that instructions or lists would contain words other than very simple words.

The various categories of educational levels appear to present a continuum of educational accomplishment with respect to

reasoning, arithmetic, and language skills. See Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987). The ALJ expressly found that Plaintiff had a limited education, which would necessarily involve language skills beyond those needed for the lesser category of marginal education, namely, for simple, unskilled types of jobs. If the evidence, to the extent developed below, is inadequate to support a finding of literacy, then it is difficult to see how it might support a finding of a limited education. The mere fact that Plaintiff admitted to attendance of ten years of schooling is not determinative because there is substantial other evidence to contradict the numerical grade level. 20 C.F.R. § 404.1564(b).

Although the ALJ expressly made credibility findings concerning Plaintiff's subjective complaints and the lack of record support for Plaintiff's daughter's assertion that Plaintiff's condition was deteriorating,[4] he made no credibility findings relating to Plaintiff's educational level. His findings thus do not serve to explain his reasoning.

Defendant argues that the educational factor of illiteracy or the inability to communicate in English is not pertinent to a claimant whose RFC is medium work, as distinct from light or sedentary work. Defendant relies on 20 C.F.R. Part 404, Subpt. P,

---

[4] The ALJ expressly made credibility findings negative to Plaintiff and her daughter based on inconsistencies in the record. He concluded that Plaintiff's complaints of symptoms were not supported by the record, Plaintiff failed to comply with her medication regimen despite her claims to the contrary, Plaintiff did not obtain treatment commensurate with her claimed ailments, Plaintiff's constant exposure to cigarette smoke from her husband was inconsistent with her claim of being irritated by smoke, and her activities of daily living were likewise inconsistent. (A.R. 24.) The ALJ further expressly rejected the credibility of Plaintiff's daughter, concluding that although she claimed that her mother's condition had worsened, the progress notes showed the opposite. (Id.)

13

App. 2, §§ 201.00(a)-(i),[5] (sedentary RFC) and 202.00(a)-(g) (light RFC), and specifically §§ 201.00(i) and 202.00(g). Section 201.00(i) states:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. Thus, the functional capacity for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English.

Section 202.00(g), concerning sedentary work, provides:

> While illiteracy or the inability to communicate in English may significantly limit an individual's vocational scope, the primary work functions in the bulk of unskilled work relate to working with things (rather than with data or people) and in these work functions at the unskilled level, literacy or ability to communicate in English has the least significance. Similarly, the lack of relevant work experience would have little significance since the bulk of unskilled jobs require no qualifying work experience. The capability for light work, which includes the ability to do sedentary work, represents the capability for substantial numbers of such jobs. This, in turn, represents substantial vocational scope for younger individuals (age 18-49) even if illiterate or unable to communicate in English.

In contrast, § 203.00, concerning medium work, provides:

> 203.00 Maximum sustained work capability limited to medium work as a result of severe medically determinable impairment(s).
> (a) The functional capacity to perform medium work includes the functional capacity to perform sedentary, light, and medium work. Approximately 2,500 separate sedentary, light, and medium occupations can be identified, each occupation representing numerous jobs in the national economy which do not require skills or previous experience and which can be performed after a short demonstration or

---

[5] Defendant cites to § 200.01(a)-(i) (Brief at 5), but because no such section exists, it is assumed that Defendant means to refer to 201.00(a)-(i).

>     within 30 days.
>     (b) The functional capacity to perform medium work
>     represents such substantial work capability at even the
>     unskilled level that a finding of disabled is ordinarily
>     not warranted in cases where a severely impaired individual
>     retains the functional capacity to perform medium work.
>     Even the adversity of advanced age (55 or over)
>     and a work history of unskilled work may be offset by the
>     substantial work capability represented by the functional
>     capacity to perform medium work. However, we will find
>     that an individual who (1) has a marginal education,
>     (2) has work experience of 35 years or more during
>     which he or she did only arduous unskilled physical
>     labor, (3) is not working, and (4) is no longer able
>     to do this kind of work because of a severe
>     impairment(s) is disabled, even though the individual
>     is able to do medium work. (See § 404.1562(a) in this
>     subpart and § 416.962(a) in subpart I of part 416.)
>     (c) However, the absence of any relevant work experience
>     becomes a more significant adversity for individuals of
>     advanced age (55 and over). Accordingly, this factor,
>     in combination with a limited education or less,
>     militates against making a vocational adjustment to
>     even this substantial range of work and a finding of
>     disabled is appropriate. <u>Further, for individuals closely
>     approaching retirement age (60-64) with a work history
>     of unskilled work and with marginal education or less, a
>     finding of disabled is appropriate.</u> (Emphasis added.)

Although Defendant is correct in noting the relative importance of literacy and education with respect to the various RFC exertional work levels, it is not correct to conclude that literacy is insignificant to all claimants with an essentially medium RFC. As § 203.00(c) expressly notes, for individuals such as Plaintiff who are closely approaching retirement age with a work history of unskilled work, a finding of disabled is appropriate if there is a marginal education or none.

Further, the medical vocational rules themselves provide that in applying the rules, an individual's RFC and education must <u>first</u> be determined, and then the individual's specific vocational profile must be located; if that profile is not listed, than a conclusion of disabled or not disabled is not directed. § 200.00(c), (d). Although Plaintiff had nonexertional,

15

environmental limitations that reduced her capacity to perform medium work, the rules nonetheless expressly direct consideration of the exertional component alone. Section 200.00(e)(2) provides in pertinent part:

> However, where an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

As previously noted, § 203.01 expressly provides that a claimant closely approaching retirement age with unskilled or no previous work experience and marginal or no education is disabled.

Thus, the rules concerning medium work expressly direct that a claimant closely approaching retirement age with unskilled previous work experience and marginal education or none is disabled. A finding of a marginal or no education would eliminate the occasion for VE testimony because the result would be dictated by the rules alone. See Howard v. Massanari, 255 F.3d 577, 584 (8th Cir. 2001).

In this respect, the present case is analogous with Silveira v. Apfel, 204 F.3d 1257 (9th Cir. 2000). There the disability status of a forty-nine-year-old claimant with an essentially unskilled work history who could perform sedentary work was dependent upon whether his six years of schooling in Mexico, ability to read in Spanish, possession of a driver's license, ability to shop, pay bills, and handle his bank account constituted substantial evidence to support a conclusion that he

16

had a limited education or less but was at least literate. The ALJ had applied a regulation applicable to one with a limited education or less but who was at least literate. Noting that the ALJ had made no express finding regarding literacy, and concluding that the evidence was insufficient to determine whether or not the claimant was literate in English, the court remanded the matter for consideration and a finding on the issue.

Although the record here contains some evidence concerning Plaintiff's ability to read, it requires further development and consideration of facts relating to Plaintiff's education and literacy, including her ability to read and write, and appropriate findings. Cf. Silveira, 204 F.3d at 1258, 1262.

III. Disposition

In summary, based on the foregoing, the Court concludes that the ALJ's decision was not supported by substantial evidence in the record as a whole and was not based on proper legal standards.

Accordingly, it IS ORDERED that

1. Plaintiff's social security complaint IS GRANTED, and

2. The matter IS REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further development of the record and further consideration and findings, consistent with this decision, of whether or not on the basis of the Plaintiff's age, education, work experience, and residual functional capacity she could perform any work existing in significant numbers within the economy, and specifically, Plaintiff's education and literacy; and

3. Judgment BE ENTERED for Plaintiff Wanita Bonds and

against Defendant Jo Anne B. Barnhart.

IT IS SO ORDERED.

**Dated:     February 22, 2006**            /s/ Sandra M. Snyder
icido3                                              UNITED STATES MAGISTRATE JUDGE